UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH LAMBERT,

                      Plaintiff,

v.                                                                     1:18-CV-0555
                                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>TIMOTHY HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | CATHARINE ZURBRUGG, ESQ.<br>FRANCIS TANKARD, ESQ.<br>SARAH PRESTON, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 18.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted, to the extent he seeks remand, and the Commissioner's motion is denied.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1969. (T. 146.) He completed the eighth grade. (T. 307.) Generally, Plaintiff's alleged disability consists neck fusion, heart attack, chronic obstructive pulmonary disease ("COPD"), and ankle injury. (T. 306.) His alleged disability onset date is March 17, 2015. (T. 146.) His date last insured is December 31, 2020. (T. 24.) Plaintiff's past relevant work consists of food handler, laborer, and maintenance. (T. 307.)

### B. Procedural History

On April 28, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 146.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 8, 2017, Plaintiff appeared before the ALJ, Stephen Cordovani. (T. 54-96.) On June 21, 2017, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 19-45.) On March 20, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-36.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2020 and Plaintiff had not engaged in substantial gainful activity since March 17, 2015. (T. 24.) Second, the ALJ found Plaintiff had the severe impairments of: degenerative disc disease of the neck, status post multilevel

fusion surgeries C3-4 to C6-7; COPD; left foot subtalar arthritis, status post fusion surgery; subscapularis tendon rupture of the shoulder; and degenerative changes in the lumbar spine. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in [20 C.F.R. §§ 404.1567(a) and 416.967(a)] except he can occasionally climb ramps, stairs and balance. He can never climb ladders, ropes or scaffolds. He should not perform overhead reaching or work on uneven ground. He should not work at unprotected heights, or around dangerous moving mechanical parts. He should not work with vibratory tools or equipment. He should not be exposed to extreme heat, cold, wetness or humidity. He should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. He can perform unskilled work only with instruction to be provided orally or by demonstration.

(T. 27.)[1] Fifth, the ALJ determined Plaintiff was unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 34-36.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to reconcile the RFC with the functional capacity forms he afforded great weight. (Dkt. No. 13 at 13-16.) Second, and lastly, Plaintiff argues the ALJ did not provide good reasons for affording a treating

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R.§§ 404.1567(a), 416.967(a).

3

source's medical statement little weight. (*Id*. at 16-19.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 17.)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ properly considered the opinion evidence in formulating the RFC. (Dkt. No. 16 at 15-21.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. See *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

5

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

Plaintiff asserts the ALJ erred in his RFC determination because he afforded opinion evidence containing reaching limitations "great weight," however the RFC failed to contain any reaching limitations. (Dkt. No. 13 at 13-16.) Defendant asserts the ALJ's RFC, which did not contain reaching limitations, was supported by the record. (Dkt. No. 16 at 15-18.)

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

As an initial matter, both parties misread the ALJ's RFC. The ALJ's RFC provided for reaching limitations. (T. 27.) Specifically, the ALJ found Plaintiff "should not perform overhead reaching." (*Id.*) Therefore, Plaintiff's assertion, that the ALJ's RFC failed to account for any reaching limitations, is without merit. However, the court must conduct a "review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-176 (2d Cir. 2013).

Although the ALJ provided a reaching limitation in his RFC determination, it is unclear from the ALJ's determination and a review of the administrative record, what evidence supported the RFC limitation to no overhead reaching. The ALJ misread critical evidence in the record and relied on his error in formulating his RFC; therefore, the RFC cannot be said to be supported by substantial evidence. Further, remand is necessary because the ALJ failed to properly assess medical opinion evidence in the record.

The record contains various opinions concerning Plaintiff's functional limitations, including his ability to reach. On March 29, 2017, physical therapist, Brett Morgan, conducted a "Physical Abilities Testing Report." (T. 899-902.)[3] The report essentially limited Plaintiff to light work with additional non-exertional limitations. (T. 899.) In

---

[3] Mr. Morgan's report listed the "assessment date" as March 29, 2017; however, the signature line is dated October 21, 2014. (T. 1029, 1032.) It is apparent from the record that Mr. Morgan completed one assessment in March 2017 and the October 2014 date was written in error. First, the assessment was ordered in March 2017. (T. 898.) Second, the assessment refers to treatment received in 2016. (T. 899.) Lastly, the record does not contain an assessment with an "assessment date" of October 2014, nor does the record contain any indication an assessment was ordered in 2014. In addition, a treating source ordered the assessment in March 2017. (T. 898.) Further, the assessment is in the record twice at Exhibit B23F and B27F. (T. 899-902, 1029-1032.)

relevant part, Mr. Morgan indicated Plaintiff could occasionally reach forward and occasionally reach overhead. (T. 900.)[4] The assessment completed by Mr. Morgan defined occasionally as "activity performed 0-2.6 hours or up to 33% of the day." (*Id*.)

On April 7, 2017, Plaintiff's treating physician, Michael Parentis, M.D., completed a "Physical Residual Functional Capacity Assessment." (T. 903-910.)[5] Dr. Parentis indicated Plaintiff was "unlimited" in "reaching all directions (including overhead)." (T. 906.)

Plaintiff received treatment, including surgery, for his shoulder impairment from orthopedic surgeon Ryan Wilkins, M.D. In March 2017, approximately one year after rotator cuff surgery, Plaintiff reported to Dr. Wilkins that his shoulder pain was "minimal and frequent." (T. 897.) He informed Dr. Wilkins pain occurred with "repetitive reaching or with attempted overhead activities." (*Id*.) Dr. Wilkins reinforced Plaintiff's post-operative restrictions of no lifting, pushing, or pulling greater than 20 pounds. (T. 896, 898.)

Although the ALJ summarized the medical opinion evidence, and other evidence, in the record concerning Plaintiff's reaching ability, it is not clear from the ALJ's decision what evidence in the record supported his RFC limitation to "no overhead reaching" because the ALJ misread the record and mistakenly attributed opinions to the wrong sources.

---

[4] Mr. Morgan could choose between the following three options: occasionally, frequently, and constantly. (T. 899.)

[5] Dr. Parentis's opinion is located twice in the record. First in Exhibit B23F together with Mr. Morgan's assessment. (T. 899-910.) Dr. Parentis's opinion is also located in Exhibit B27F together with Mr. Morgan's assessment; however, Exhibit B27F also contains a letter from Plaintiff's counsel to Dr. Parentis in which he sent the doctor a copy of Mr. Morgan's assessment and requested the doctor complete his RFC form based on the findings in the assessment. (T. 1028-1040.)

The ALJ appears to rely on Dr. Wilkins's March 2017 treatment notation to support his RFC limitation to no overhead reaching; however, the ALJ misread the notation.  In discussing Plaintiff's shoulder impairment and subsequent reaching limitations, the ALJ outlined Dr. Wilkins's treatment notations and work restrictions.  (T. 32.)  The ALJ relied on Plaintiff's reports to Dr. Wilkins, which the ALJ summarized as limitations with "overhead reaching and overhead activities."  (T. 32, 897.)  However, as outlined above, the March 2017 notation indicated Plaintiff had shoulder pain with "repetitive reaching or with attempted overhead activities."  (T. 897.)  Elsewhere in his decision, the ALJ afforded Dr. Wilkins's "shoulder limitations" great weight because "the opinion is very specifically, functionally expressed."  (T. 34.)  Although Dr. Wilkins provided lifting, pushing and pulling limitations, which inherently require some aspect of reaching, the doctor did not provide specific reaching limitations.  (T. 896, 898.)  Therefore, the ALJ's RFC limitation to no overhead reaching appears to be based on an erroneous reading of Dr. Wilkins's March 2017 treatment notation and opinion.

In support of his reaching limitation, the ALJ also appears to rely on an opinion in the record which concluded Plaintiff was "unlimited" in his ability to reach; however, the ALJ once again misread the record.  The ALJ properly noted Plaintiff underwent a functional capacity assessment on March 29, 2017, during which Mr. Morgan assessed he could lift 20 pounds occasionally and 10 pounds frequently.  (T. 32, 899.)  The ALJ then stated Mr. Morgan "completed a functional assessment on April 7, 2017."  (T. 32, referring to T. 1034.)  The ALJ noted the April 2017 statement indicated Plaintiff had "an unlimited ability to reach, handle, finger, and feel."  (T. 32, referring to T. 1036.)  The ALJ was mistaken.

First, Mr. Morgan did not complete a functional assessment dated April 7, 2017. Dr. Parentis completed the April 2017 assessment and opined Plaintiff had no reaching limitations. (T. 906.) Second, Mr. Morgan's March 2017 functional assessment indicated Plaintiff could only occasionally reach in all directions. (T. 1030.) Although the ALJ summarized a portion of Mr. Morgan's assessment, the ALJ did not discuss, or mention, Mr. Morgan's reaching limitations in his written decision. (T. 32, 34.) Overall, the ALJ misread crucial evidence pertaining to Plaintiff's ability to reach. Therefore, the ALJ's limitation, to no overhead reaching, is not supported by substantial evidence in the record.

The ALJ's analysis of the opinion evidence in the record further befuddles the reviewer. In weighing the opinion evidence in the record, the ALJ stated, "Dr. Parentis (Exhibits B27F) is given significant weight but [Plaintiff's] extensive activity level throughout [the] period in question prevents giving greater weight." (T. 34.) The ALJ further reasoned Dr. Parentis's opinion was inconsistent with Mr. Morgan's assessment that Plaintiff could frequently walk. (*Id.*)[6]

The ALJ procedurally erred in his analysis of the treating source's opinion and a review of the ALJ's decision does not assure the court that the substance of the rule was not traversed. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). Dr. Parentis was a treating source and the ALJ failed to properly assess his opinion under 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). There is no indication from the ALJ's

---

[6] In evaluating the opinion evidence, the ALJ correctly noted in one section that Mr. Morgan opined Plaintiff could frequently walk. (T. 34, 900.) However, in another paragraph the ALJ stated Mr. Morgan's opinion supported light work because he opined Plaintiff could frequently stand and occasionally walk. (T. 34, 900.) Although this specific inconsistently is most likely harmless, it should be addressed on remand.

decision that he acknowledged Dr. Parentis as a treating source or assessed his opinion under the treating physician rule. Indeed, as outlined above, as one point in his decision the ALJ attributed Dr. Parentis's opinion to the non-acceptable medical source, Mr. Morgan.

The ALJ further erred in his assessment of Dr. Parentis opinion because the ALJ essentially found his opinion inconsistent with Plaintiff's activities of daily living and not objective medical findings or observations. (T. 34.) This court has held such reasoning is "specious and unsupported by the law or common sense." *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (the ALJ erroneously discredited a treating source's opinion because plaintiff was "capable of activities such as engaging in activities of daily living, fixing cars in a garage, and overseeing his own medical and psychiatric treatment").

Further, the ALJ afforded great weight to Mr. Morgan's assessment, reasoning the opinion "appears to be the result of extensive testing and it is consistent over two reports covering a two-year period." (T. 34.) However, a review of the record indicates Mr. Morgan only completed one assessment in 2017, which was included in the record twice. Lastly, the ALJ concluded Mr. Morgan's assessment did not support "any greater limitations than in the residual functional capacity assessed herein." (T. 34.) However, as already addressed herein, Mr. Morgan provided greater reaching limitations than imposed in the RFC. (T. 1030.)

Overall, the ALJ's RFC determination was the product of legal error and not supported by substantial evidence. Although the ALJ's RFC limited Plaintiff to no overhead reaching, it is not clear from the ALJ's decision or the record what evidence

the ALJ based his limitation on.  The ALJ misread the record and relied on a misreading to formulate his RFC determination.  Lastly, the ALJ failed to properly assess the opinion evidence in the record.

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

    **ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:    September 13, 2019

*[Signature: Bill Carter]*

William B. Mitchell Carter
U.S. Magistrate Judge